UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERT C. MCMATH,

      Plaintiff,

      v.                                  Case No. 24-C-20

JULIO DE LIMA SILVA,

      Defendant.

---

### DECISION AND ORDER PARTIALLY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

    Plaintiff Robert McMath, who is serving a state prison sentence at Wisconsin Secure Program Facility and representing himself, filed this action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated. McMath is proceeding on an Eighth Amendment failure to protect claim and a First Amendment retaliation claim against Sgt. de Lima Silva. In particular, McMath asserts that Sgt. de Lima Silva failed to protect him from an inmate attack that occurred at Waupun Correctional Institution on September 4, 2023, and that Sgt. de Lima Silva acted in retaliation due to McMath filing an inmate complaint against another officer. This matter comes before the court on Sgt. de Lima Silva's motion for summary judgment. For the reasons explained below, the motion will be partially granted.

### BACKGROUND

    At all times relevant, McMath was an inmate housed at Waupun Correctional Institution (WCI). From July 2013 to April 2025, Sgt. de Lima Silva was employed by the Wisconsin Department of Corrections as a correctional sergeant. During the relevant time, he worked at Flambeau Correctional Center. Beginning on August 29, 2023, Sgt. de Lima Silva temporarily

assisted at WCI as a Supplemental Staff Program Employee. He was not a regular staff member at WCI and did not know any of the inmates or their cell assignments. Dkt. Nos. 74, 96 at ¶¶ 1–2, 13, 16.

On September 4, 2023, Sgt. de Lima Silva worked at WCI as an "extra officer" on first shift, but he was asked to work overtime in the Northwest Cell Hall (NWCH), one of the general population cell halls. Extra officers are not assigned a specific post. Instead, they go wherever they are needed. At 12:10 p.m., Sgt. de Lima Silva observed Officer Jessie Feuerhammer escorting Inmate Parker from the low side of Range I. Officer Feuerhammer approached Sgt. de Lima Silva and asked if he would take Inmate Parker back to his cell, which was located in Range J in general population. *Id.* ¶¶ 17–19, 22–23.

Inmate Parker was not wearing restraints, and Officer Feuerhammer did not direct Sgt. de Lima Silva to place Inmate Parker in restraints. It was Sgt. de Lima Silva's understanding that restraints were only required in the general population cell halls when the inmate had been involved in an altercation, in the case of a medical emergency, or for alleged suicidal claims. Officer Feuerhammer did not make Sgt. de Lima Silva aware of any of these conditions, and Sgt. de Lima Silva did not believe any of these conditions applied. Sgt. de Lima Silva was not in the cell hall when Inmate Parker was initially removed from Range J, and he did not know why Inmate Parker was initially removed. *Id.* ¶¶ 24–26.

Sgt. de Lima Silva understood Officer Feuerhammer to say that Inmate Parker's cell was Cell J-17. The area where Officer Feuerhammer and Sgt. de Lima Silva were talking was very loud. Sgt. de Lima Silva asked if Officer Feuerhammer said "17." Officer Feuerhammer responded "yes" and walked toward a person who had called him to perform a different task. Sgt. de Lima Silva then followed Inmate Parker up to Range J. *Id.* ¶¶ 27–29.

2

Sgt. de Lima Silva and Inmate Parker approached Cell J-16 on Range J, and Sgt. de Lima Silva radioed the NWCH sergeant and asked for Cell J-16 to open. As a Supplemental Staff Program Employee, Sgt. de Lima Silva was not allowed to control the opening or closing of the automated doors in the cell halls. Cell doors may only be opened remotely by the Cell Hall Sergeant after a request is made by a correctional officer to open the door. *Id.* ¶¶ 30, 85, 89, 91.

As Sgt. de Lima Silva radioed for Cell J-16 to open, he saw Inmate Parker put something into Cell J-16 through an opening near the bottom of the door. At that moment, Sgt. de Lima Silva remembered that Inmate Parker was in Cell J-17, not Cell J-16, so he closed the door of Cell J-16. Inmate Parker never told Sgt. de Lima Silva that Cell J-16 was his cell. The surveillance camera footage of the incident does not contain any audio. It shows Inmate Parker and Sgt. de Lima Silva standing in front of Cell J-17 at 01:08:50. At 01:09:02, an inmate approached Sgt. de Lima Silva and asked to be let into Cell J-15. Sgt. de Lima Silva let the inmate into Cell J-15, which had already been opened from the control center by the NWCH Sergeant. Sgt. de Lima Silva closed the door of Cell J-15 at 01:09:13. As he walked back toward Inmate Parker, Sgt. de Lima Silva closed the door of Cell J-16 at 01:09:15. Three seconds later, once he stood in front of Cell J-17, Sgt. de Lima Silva radioed the NWCH Sergeant to open the cell door. The NWCH Sergeant opened Cell J-17. *Id.* ¶¶ 31–33, 37–40, 43, 48; Dkt. No. 76-1 at 01:08:50–01:09:18.

The parties dispute what occurred next. According to Sgt. de Lima Silva, he observed only one inmate in the back of Cell J-17. He asserts that neither McMath nor his cellmate told Sgt. de Lima Silva that Inmate Parker was not housed in Cell J-17, that he had a shank in his pocket, or that Inmate Parker had threatened to stab McMath before. As soon as Cell J-17's door opened, Inmate Parker entered the cell and began arguing with McMath. Sgt. de Lima Silva looked

3

closer inside Cell J-17 and saw that there were already two inmates inside the cell. Dkt. No. 74 at ¶¶ 44, 49–50, 81. According to McMath, Sgt. de Lima Silva knew there were two inmates in Cell J-17 before Inmate Parker entered the cell. He asserts that Inmate Parker was arguing with McMath prior to entering the cell and that McMath told Sgt. de Lima Silva not to open Cell J-17, that Inmate Parker previously threatened to stab him, and that Inmate Parker had a shank in his sweatpants. Dkt. No. 96 at ¶¶ 44, 49, 80–81, 96. McMath has submitted a declaration from his cellmate, who heard Inmate Parker say "I'm about to fuck you up" and McMath tell Sgt. de Lima Silva that Inmate Parker had a shank in his sweatpants, threatened to stab him, and did not belong in the cell, and that there were already two people in the cell. According to McMath's cellmate, Sgt. de Lima Silva saw him in the cell with McMath but ignored McMath's pleas and allowed Inmate Parker to enter the cell anyway. Dkt. No. 95-1 at 31–34. McMath also submitted declarations from other inmates who heard Inmate Parker state, "I'm about to fuck you up" and McMath say "he threatened to stab me," "he has a weapon in his sweatpants," and "he doesn't belong in this cell, it's already two people in here." Id. at 23–24, 29–30, 37–38, 40–41.

      The surveillance camera footage of the incident shows that Inmate Parker had his hand on the door of Cell J-17 at 01:09:23. He entered the cell four seconds later and yelled at McMath. Three seconds after Inmate Parker entered the cell, Sgt. de Lima Silva placed a call on his radio for security backup. Sgt. de Lima Silva directed Inmate Parker to come out of Cell J-17 or he would deploy OC spray at him. Sgt. de Lima Silva told Parker to come out of the cell while also being on the radio. Inmate Parker ignored Sgt. de Lima Silva's verbal commands. When Inmate Parker entered the cell, McMath's cellmate was between him and McMath. Inmate Parker yelled for the cellmate to get out of his way, which McMath's cellmate did. Inmate Parker started to "beat down" McMath. Sgt. de Lima Silva observed Inmate Parker holding what appeared to be a

4

white colored stick in his left hand that he used as a weapon to stab McMath in the upper torso and facial area. Dkt. Nos. 74, 96 at ¶¶ 52, 54–58, 61; Dkt. No. 76-1 at 01:09:23–01:09:32.

Sgt. de Lima Silva determined it was not safe to enter Cell J-17 by himself. He was outnumbered by three inmates, and he did not believe he could maintain a position of control. Sgt. de Lima Silva did not pull Inmate Parker out of Cell J-17 because there was not enough space to restrain Inmate Parker on the ground. Even assuming Sgt. de Lima Silva could restrain Inmate Parker by himself, at least one other officer was needed to restrain McMath. Sgt. de Lima Silva did not deploy OC spray because, based upon his experience, when OC spray is deployed, some individuals are not deterred by it, some individuals can become more violent, and some individuals may panic, run away from the scene, and cause potential injuries. Based on Sgt. de Lima Silva's training and experience, he believed the best course of action was to immediately call for security backup and, once security arrived, they could separate Inmate Parker and McMath. Dkt. Nos. 74, 96 at ¶¶ 74, 76–78.

While waiting for the security backup staff to arrive, Sgt. de Lima Silva continued to verbalize in a very loud voice for Inmate Parker and McMath to disengage. Security staff began running to Cell J-17 about twenty seconds after Sgt. de Lima Silva radioed for backup. McMath's cellmate exited the cell as security staff arrived. Officer Grover immediately gave the inmates a directive to stop fighting or he would spray them. Due to their noncompliance, Officer Grover deployed his OC spray toward Inmate Parker and McMath. Dkt. Nos. 74, 96 at ¶¶ 59, 62–63; Dkt. No. 76-1 at 01:09:32–01:09:50.

Sgt. de Lima Silva heard Inmate Parker say to McMath, "I'm gonna fucking throw you down out of here, you motha-fucka." Inmate Parker exited the cell, dragging McMath with both of his hands. As Inmate Parker approached Range J's railing, Sgt. de Lima Silva saw Inmate

5

Parker with his right arm around McMath's head. To stop Inmate Parker from throwing McMath over the railing and to prevent great bodily harm and possible death to McMath, Sgt. de Lima Silva used a focused strike at Inmate Parker, which caused Inmate Parker to fall down. Sgt. de Lima Silva separated Inmate Parker and McMath. He took control of Inmate Parker while the other staff took control of McMath. Sgt. de Lima Silva removed Inmate Parker from the scene. The time between when Inmate Parker and Sgt. de Lima Silva first arrived in front of Cell J-17 and Sgt. de Lima Silva brought Inmate Parker to the ground outside of the cell was one minute and fifteen seconds. Dkt. Nos. 74, 96 at ¶¶ 64–67; Dkt. No. 76-1 at 01:08:50–01:10:05.

On the ground, Inmate Parker did not stop actively resisting, fighting, or trying to escape. he grabbed objects that were lying on the floor, including sharp pieces of mirror, and tried several times to stab and hit Sgt. de Lima Silva. Sgt. de Lima Silva was able to remove the sharp pieces of mirror from his hands by applying pressure to his wrist. To maintain control of Inmate Parker and to protect himself and the others around him, Sgt. de Lima Silva used two focused strikes on Inmate Parker and verbalized, "Stop resisting! Stop resisting! Put your hands behind your back!" Officer Tricia Eikland helped Sgt. de Lima Silva restrain Inmate Parker's hands behind his back. Sgt. de Lima Silva and Officer Michael Lueneburg helped Inmate Parker to his feet and escorted him out of the scene. After they removed Inmate Parker from the scene, he continued to resist and be combative. McMath was taken to the Restrictive Housing Unit and seen by a nurse for the injuries he sustained, including injuries around the right eye, redness and bruising to the right abdominal side, and redness and bruising to the right buttocks. *Id.* ¶¶ 68–71, 119.

In May 2023, McMath filed an inmate complaint against Officer Zachary Lange after McMath learned that Officer Lange was telling inmates that McMath was a snitch in an attempt to recruit inmates to assault McMath. Sgt. de Lima Silva asserts that, prior to and on September 4,

2023, he did not know a correctional officer named Zachary Lange and only learned of Officer Lange during the course of this lawsuit; he was not aware that McMath filed a Prison Rape Elimination Act (PREA) complaint at WCI or that McMath made complaints about the mishandling of his PREA complaint; and he was not aware of any threats made to McMath due to the filing of the PREA complaint. Dkt. No. 74 at ¶¶ 103–06. According to McMath, he saw Sgt. de Lima Silva and Officer Lange talking on September 1, 2023. Dkt. No. 95-1 at 70.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### A. Eighth Amendment Claim

McMath asserts that Sgt. de Lima Silva violated his rights when he failed to protect him from being attacked by another inmate. The Eighth Amendment's prohibition on cruel and unusual punishment "requires prison officials 'to protect prisoners from violence at the hands of other prisoners.'" *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "Yet, a prison official does not violate the Eighth Amendment every time an inmate is attacked by another inmate." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). An inmate may succeed on a failure to protect claim by showing that "(1) 'he is incarcerated under conditions posing a substantial risk of serious harm,' and (2) defendant-officials acted with 'deliberate indifference' to that risk." *Brown*, 398 F.3d at 909 (quoting *Farmer*, 511 U.S. at 834). Under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Once prison officials know about a serious risk of harm, they have an obligation 'to take reasonable measures to abate it.'" *Dale*, 548 F.3d at 569 (quoting *Borello v. Allison*, 445 F.3d 742, 747 (7th Cir. 2006)). The Seventh Circuit has recognized that "an official's response may be reasonable even if it fails to avert the harm." *Id*. "[T]he official's response must be so inadequate that it amounts to a reckless disregard for the risk and effectively condones the attack." *Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018) (internal quotation marks and citation omitted).

It is clear from the video that almost immediately after Inmate Parker entered McMath's cell and began his attack, Sgt. de Lima Silva took steps to protect McMath. He radioed for help, and when help arrived, he entered the cell and attempted to pull Inmate Parker off of McMath. His

8

conduct at that point in time displays anything but deliberate indifference toward McMath's safety. But McMath has offered evidence, both his own declaration and that of several other inmates, including McMath's cellmate who was present throughout, that it was clear before Sgt. de Lima Silva had McMath's cell door opened to allow Inmate Parker into the cell that Inmate Parker intended to attack McMath.

According to McMath and his cellmate, Inmate Parker was verbally threatening McMath prior to entering the cell and McMath told Sgt. de Lima Silva that Inmate Parker did not belong in the cell, was threatening to kill him, and had a shank in his pants. According to the cellmate, Sgt. de Lima Silva could see there were already two people in the cell, yet he nevertheless ignored McMath's pleas and allowed Inmate Parker to enter the cell and attack McMath. Dkt. No. 95-1 at 31, ¶¶ 28–38. If a jury were to believe this version of events, the jury could reasonably draw an inference that a substantial risk of harm existed, that Sgt. de Lima Silva in fact recognized that risk, and that, by allowing Inmate Parker to enter the cell, Sgt. de Lima Silva was deliberately indifferent to the risk to McMath's safety. *LaBrec v. Walker*, 948 F.3d 836, 846 (7th Cir. 2020). Under this theory, Sgt. de Lima Silva's subsequent efforts to protect McMath are viewed as some sort of cover-up for his earlier actions or an effort to limit the extent of damage Parker could inflict on McMath. In any event, a factual dispute exists that the court cannot resolve on summary judgment. Accordingly, Sgt. de Lima Silva is not entitled to summary judgment on this claim.

Nor is Sgt. de Lima Silva entitled to qualified immunity. The general standard for liability under the Eighth Amendment for failing to protect an inmate was well established at the relevant time. "The purpose of the doctrine of qualified immunity is to shield public officers from liability consequent upon either a change in law after they acted or enduring legal uncertainty that makes it difficult for the officer to assess the lawfulness of the act in question before he does it." *Walker*

9

*v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (citation omitted). There is no question that if Sgt. de Lima Silva conducted himself in the manner McMath asserts, Sgt. de Lima Silva's actions would have violated the Eighth Amendment. *See Payne v. Pauley*, 337 F.3d 767, 776–81 (7th Cir. 2003) (holding that fact questions precluded summary judgment on issue of qualified immunity).

**B. First Amendment Claim**

McMath asserts that Sgt. de Lima Silva acted in retaliation due to McMath filing a complaint against Officer Lange. McMath filed an inmate complaint against Officer Lange after McMath learned that Officer Lange was telling inmates that McMath was a snitch in an attempt to recruit inmates to assault McMath. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citations omitted).

Sgt. de Lima Silva asserts that McMath merely speculates that there is a causal connection between the filing of McMath's complaints and Sgt. de Lima Silva's conduct. Although Sgt. de Lima Silva asserts that, prior to and on September 4, 2023, he did not know a correctional officer named Zachary Lange and only learned of Officer Lange during the course of this lawsuit, McMath maintains that he saw Sgt. de Lima Silva and Officer Lange talking on September 1, 2023. Even if this interaction occurred, McMath does not know what Sgt. de Lima Silva and Officer Lange discussed. Speculation regarding a defendant's allegedly retaliatory motives cannot create a genuine issue of material fact sufficient to survive a motion for summary judgment. *Debvbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013). Indeed, "a suspicion is not enough to get past a motion for summary judgment." *Manuel v. Nalley*, 966 F.3d 678, 681 (7th Cir. 2020)

10

(quoting *Laudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011)). Apart from his speculation and belief, McMath presents no evidence that his inmate complaints were the motivating factor for Sgt. de Lima Silva's actions. Therefore, Sgt. de Lima Silva is entitled to summary judgment on McMath's retaliation claim. Sgt. de Lima Silva argues that he is entitled to qualified immunity, but because the court is granting summary judgment in his favor on the merits, it need not consider his qualified immunity arguments.

## NEXT STEPS

McMath's Eighth Amendment failure to protect claim against Sgt. de Lima Silva will proceed to trial. On December 1, 2025, McMath filed a motion for recruitment of counsel. Given the complexity of trying a case before a jury, including offering a coherent opening statement and closing argument, presenting and examining witnesses, and locating and introducing evidence, the court concludes that McMath will benefit from the assistance of counsel in the next stage of litigation. Accordingly, McMath's motion to recruit counsel is granted, and the court will make efforts to recruit a volunteer lawyer to represent him at trial.

The demand for volunteer lawyers is high, but the supply is low. Few lawyers have the time, ability, or experience to volunteer for cases such as these. The court encourages McMath to be patient as it makes efforts to recruit a lawyer to represent him. The process may take some time. The court will promptly notify McMath in the event a lawyer volunteers. In the meantime, the court encourages the parties to explore settlement. If the parties would like to try mediation, the court can refer the case to a magistrate judge for that purpose. If at any time McMath decides he would like to proceed on his own without a lawyer, he should promptly notify the court, and the court will schedule a status conference to set a trial date.

## CONCLUSION

For these reasons, Sgt. de Lima Silva's motion for summary judgment (Dkt. No. 72) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The motion is granted with respect to McMath's First Amendment retaliation claim, and that claim is dismissed. The motion is denied as to McMath's Eighth Amendment failure to protect claim. McMath's motion to recruit counsel (Dkt. No. 97) is **GRANTED**.

**SO ORDERED** at Green Bay, Wisconsin this 27th day of February, 2026.

William C. Griesbach
United States District Judge